## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| VERNICE NEWTON, | : | Case No. 2:12-cv-698 |
| | : | |
| Plaintiff, | : | Judge Smith |
| | : | |
| | : | Magistrate Judge Abel |
| v. | : | |
| | : | |
| | : | |
| PORTFOLIO RECOVERY ASSOCIATES, | : | **DEFENDANT'S MOTION FOR** |
| LLC, | : | **SUMMARY JUDGMENT** |
| | : | |
| Defendant. | : | |

_____

In accordance with Civil Rule 56, Defendant Portfolio Recovery Associates, LLC ("Portfolio") moves the Court for summary judgment. Even accepting Plaintiff Vernice Newton's most recent version of the facts as true, Portfolio called his phone number twice a week and only spoke to him once during the period within the statute of limitations. According to Mr. Newton's deposition testimony, this conversation was short and tame.

Therefore, for the reasons more fully explained in the attached Memorandum in Support and the Affidavits of Timothy Reese and Ryan S. Lett, attached as Exhibit A and Exhibit B, respectively, Portfolio is entitled to summary judgment on every one of Mr. Newton's claims under the Federal Debt Collection Practices Act ("FDCPA").

Respectfully Submitted,


   */s/ Ryan S. Lett*_____
Ryan S. Lett (0088381)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone:  (513) 651-6118

i

Fax:  (513) 651-6981
rlett@fbtlaw.com

*Attorney for Defendant Portfolio Recovery
Associates, LLC*

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      INTRODUCTION**

       This lawsuit is, at best, a case of mistaken identity, and, at worst, vexatious litigation. Among a laundry list of FDCPA violations, Mr. Newton's primary allegation stems from a conversation he purportedly had with a Portfolio representative named "Quincy" in March 2011. During that conversation, Mr. Newton claims, "Quincy" made racially disparaging statements.  On the other hand, Portfolio's automatically generated call records prove that it did not call Mr. Newton's number in March 2011; indeed, it did not call Mr. Newton's number until November 2011—eight months later.  Further, Portfolio only did so to reach Mr. Newton's *wife*, not him.

       But there is a perfect explanation for this stark contrast between Mr. Newton's testimony and the call records.  Around the same time frame, Mr. Newton admits he was receiving calls from at least two other companies related to debt disputes.  And even though he failed to mention it during the vast majority of his deposition, Mr. Newton later confessed that he had spoken to "Quincy" before March 2011 when "Quincy" worked for one of these creditors, Cash Net, and that Cash Net made a "bunch of calls" to Mr. Newton about a debt disagreement.  Despite this coincidence, Mr. Newton remains certain that "Quincy" worked for Portfolio in March 2011.

       Mr. Newton claims that the other creditor called him during a similar time period, February 2011 to June 2011.  Mr. Newton also sued this creditor, named *Consumer* Recovery Associates— not to be confused with *Portfolio* Recovery Associates—and apparently reached an extrajudicial resolution to that dispute.  As if the name similarity was not enough, when asked about this other dispute during his deposition, Mr. Newton's story was very similar to what he alleges Portfolio to have done.  Namely, he was first called by a "black guy"; then a "lady" (the "black guy's" supervisor); and was forwarded to an "Italian guy," who, in both instances, Mr. Newton had to tell

1

to "put somebody on the phone that speak English." Despite these similarities, Mr. Newton remains certain it was Portfolio that called in March 2011. This is even though his story has changed drastically each time Portfolio has heard from him during this litigation, starting with his Verified Complaint, then his Discovery Responses, and finally his deposition.

Fortunately, one need not explain this mountain of coincidences to conclude that Mr. Newton's claims lack any evidentiary support. Mr. Newton alleges that he had two conversations with Portfolio in March 2011, and one in August 2011. Under the FDCPA's one-year statute of limitations, any claim based on these first two purported conversations is time-barred. And even Mr. Newton admits that nothing harassing was said during the third.

Nor do any of Mr. Newton's other FDCPA have any merit. Under this Court's precedent, Portfolio did not call Mr. Newton's number at a sufficient frequency or volume to violate the FDCPA. Further, Mr. Newton's remaining claims fail not only because he lacks standing to assert them, but, even if he did, they lack any factual support. In brief, even if one suspends belief long enough to ignore the overwhelming evidence suggesting this litigation is, at best, a mistake, and, at worse, vexatious, Portfolio is still entitled to summary judgment on all claims.

## II. FACTUAL BACKGROUND

### A. Portfolio's business operations.

Portfolio is a company that purchases primarily charged-off debt consumer receivables and attempts to collect them by calling the debtor on each account.[1] Before its representatives make any calls, they must first complete an 80-hour training program and pass an examination designed to test knowledge of FDCPA compliance.[2]

---

[1] Aff. of Timothy Rees (the "Rees Aff.," attached as Exhibit A), at ¶5.
[2] *Id.* at ¶19.

In its operations, Portfolio maintains records of all activity on each account it holds using a proprietary software system.[3]  Portfolio's system also automatically generates a record of all calls placed from any of its collection phones.[4]  This collects a variety of information automatically, including the phone number dialed, related account number, date and time of the call, and its duration.[5]  Portfolio can then search these records by field.[6]  Further, Portfolio's system automatically records certain calls.[7]

**B.**     **Portfolio purchases and attempts to collect on Mr. Newton's _wife's_ debt.**

Around July 14, 2011, Portfolio purchased certain charged-off receivables.[8]  This included a Capital One credit card (the "Capital One Debt"), with the number ****-****-****-6085 and a balance of $947.68.[9]  This debt was Maureen B. Newton's, Mr. Newton's wife.[10]  And this is the _only_ debt Portfolio has owned or collected on from Mr. Newton or his wife.

After purchasing the Capital One Debt, Portfolio sent a written notice (the "G Notice") date August 29, 2011, to Maureen's last-known address.[11]  This G Notice included all of the information required by 15 U.S.C. § 1692g.[12]

Portfolio first called (740) 348-5016 (the "5016 Number"), the number Mr. Newton shares with his wife, on November 23, 2011.[13]  Because Portfolio's system automatically tracks all calls made, it was able to create a log of all calls made to the 5016 Number (the "Newton Call

---

[3] _Id._ at ¶6.
[4] _Id._ at ¶8.
[5] _Id._
[6] _Id._
[7] _See id._ at ¶14.
[8] _Id._ at ¶7.
[9] _Id._ at ¶7; _see also_ Aff. of Assignment, attached as Exhibit A-1.
[10] _Id._ at ¶7; _see also_ Deposition of Vernice Newton (the "Vernice Dep.," relevant portions attached as Exhibit C), at 7-8.  The full transcript from the Vernice Dep. will be filed with the Court contemporaneously with this Motion.
[11] _See_ Reese Aff., at ¶8; _see also_ G Notice, attached as Exhibit A-2.
[12] _See id._ at ¶8; _see also_ G Notice.
[13] _See id._ at ¶12; _see also_ Log of calls made to (740) 348-5016 (the "Newton Call Log"), attached as Exhibit A-3.

Log").[14]  This Log demonstrates that Portfolio called Maureen: (1) between November 23, 2011, and March 7, 2012; (2) a total of 18 times during this 4-month period, 10 of which connected to a person or voicemail; and (3) 3 times per week on 1 occasion, 2 times per week on 5 occasions, and 1 time per week on 5 occasions.[15]  The Newton Call Log is the only set of phone records that have been produced in this case by either party, despite the fact that Portfolio specifically requested a copy of Mr. Newton's telephone records during discovery.[16]

Further, Portfolio's system also automatically recorded calls made to the 5016 Number in which Mr. Newton was the speaker (the "Call Recordings").[17]  In three of the four Call Recordings, the callers identify themselves as Portfolio representatives, ask to speak to Maureen Newton, and Mr. Newton says he is Maureen's husband, and the representatives stated that the call related to Maureen's Capital One Debt.[18]  In the fourth, upon learning that Maureen is not home, the Portfolio representative merely states that she will call back at another time.[19]

**C.**     **Litigation begins and Mr. Newton's story continues to change.**

Mr. Newton filed his Verified Complaint on August 2, 2012.[20]  It alleges that Portfolio called multiple telephone numbers belonging to Mr. Newton at a frequency of two-to-three times per week.[21]  It also posits that he had spoken to Portfolio "approximately 12 times," and was told on each occasion that Portfolio was attempting to collect a "Mastercard credit card debt."[22]

---

[14] *See* Reese Aff., at ¶11; *see also* Newton Call Log.
[15] *See* Newton Call Log.
[16] *See* Aff. of Ryan S. Lett (the "Lett Aff.," attached as Exhibit B), at ¶3-4; *see also* Plaintiff's Discovery Responses, attached as Exhibit C-1.
[17] *See* Reese Aff., at ¶¶15-18; *see also* January 27, 2012 Recording, attached as Exhibit A-4, February 8, 2012 Recording, attached as Exhibit A-5, February 10, 2012 Recording, attached as Exhibit A-6, and March 7, 2012 Recording, attached as Exhibit A-7.
[18] *See* January 27, 2012 Recording, at 1; February 10, 2012 Recording, at 1-2; March 7, 2013 Recording, at 1.
[19] *See* February 8, 2010 Recording, at 1.
[20] *See generally* Verified Complaint (Doc. No. 1).
[21] *See id.* at ¶10.
[22] *See id.* at ¶11.

Portfolio conducted one round of written discovery (the "Discovery Requests") and took Mr. Newton's deposition, whereas Mr. Newton did not engage in any formal discovery. Mr. Newton's responses to the Discovery Requests ("Newton's Discovery Responses") included a Verification Affidavit of Mr. Newton.[23] Unlike the allegations in his Complaint, these Discovery Responses stated only that Mr. Newton received two calls per week from Portfolio in either March 2012 or April 2012; that Portfolio "cursed" at him over the phone; and that Portfolio was attempting to collect a $300 debt originally owed to "Cash Net"—not Mastercard.[24]

And Mr. Newton's story significantly changed yet again at his March 1, 2013 deposition. He was asked to review his Complaint and Discovery Responses. Interestingly, despite having executed an Affidavit for each, he testified that *he had never reviewed or even seen either*.[25]

In addition, he whole-heartedly disagreed with the documents' content. Despite having already made two different claims about what debt Portfolio was attempting to collect, Mr. Newton testified that he had no idea what debt was involved.[26] And he again had a new story of how many conversations he had with and calls he received from Portfolio that drastically differed from the one in his Complaint and Discovery Responses. In fact, his story seemingly changed during the deposition, but, by its conclusion, he had decided on one version of events.

**D.      Mr. Newton finally decides on a story during his deposition.**

By the end of his deposition, Mr. Newton agreed that he had three conversations with Portfolio. The first was in the middle of March 2011.[27] Mr. Newton claims he received a call from a "black guy" named "Quincy," who said he worked for Portfolio.[28] Even though did not

---

[23] *See generally* Discovery Responses.
[24] *See* Discovery Responses, at Interrogatories 7, 14, 15, 24.
[25] *See* Newton Dep., at 33 (he had never reviewed the Complaint), 44 (he had never seen the Discovery Responses).
[26] *See* Newton Dep., at 40.
[27] *See id.* at 96.
[28] *See id.* at 96.

say so early in his deposition, Mr. Newton would later share this was not the first time that he had spoken to "Quincy"; rather, he had talked to him previously when "Quincy" helped him with a payday-loan application to Cash Net in June 2010.[29] Mr. Newton also shared later that Cash Net made "a bunch of calls" to him related to a disagreement over a payday loan.[30] Despite these previous interactions, Mr. Newton was certain that "Quincy" then worked for Portfolio.[31]

Mr. Newton claims that, during this first conversation, "Quincy" used a racial epithet while referring to Mr. Newton.[32] "Quincy" then purportedly made a disparaging comment that people of Mr. Newton's race "do not pay their debt."[33] Mr. Newton asked "Quincy" whether he could speak to his supervisor; when "Quincy" said no, the conversation continued to be heated, until Mr. Newton finally hung-up.[34]

That same night, Mr. Newton was purportedly called by a different Portfolio representative.[35] Mr. Newton claims it was a woman this time, who said she was "Quincy's" supervisor and apologized for his behavior.[36] When Mr. Newton asked for *her* supervisor, she forwarded him to an "Italian guy."[37] The "Italian guy" then said "hey, man, this is a debt you need to pay,"[38] became flustered, and became harder to understand.[39] Mr. Newton then said "put me some[one] on the phone, someone that can speak English," and hung-up.[40]

---

[29] *See id.* at 119-21.
[30] *See id.* at 123.
[31] *See id.* at 96.
[32] *See* Newton Dep., at 73-74.
[33] *See id.* at 73.
[34] *See id.* at 73-74.
[35] *See id.* at 96.
[36] *See id.* at 90
[37] *See id.*
[38] *See* Newton Dep., at 93
[39] *See id.*
[40] *See id.*

6

The third and final alleged conversation occurred on August 5, 2011.[41]  This conversation was short, and the only details that Mr. Newton remembers were that "Quincy" called him, said he worked for Portfolio, apologized, and indicated that he needed to collect the debt.[42]  Mr. Newton said he would not speak to "Quincy," but would talk to someone else.[43]  When "Quincy" said that he was the only person on Mr. Newton's account, Mr. Newton hung-up.[44]

Mr. Newton also testified during his deposition that Portfolio called him during the time period of March 2011 to April 2012.[45]  Before August 2011—exactly one year before the Complaint was filed—Portfolio called three-to-four times a week; during and after August 2011, this dropped to just two times a week.[46]

### E.  Potential reasons for Mr. Newton's confusion emerge during his deposition.

To state the obvious, Mr. Newton's testimony contradicts the records in the Newton Call Log.  In fact, the Newton Call Log shows that Portfolio did not call the 5106 Number until November 2011.[47]  The Call Log further demonstrates that Portfolio called only 18 times over a 4-month period—not twice a week over that timeframe.[48]

But multiple parts of Mr. Newton's deposition may explain this discrepancy.  First, Mr. Newton admitted to receiving "a bunch" of collections calls from Cash Net around the same time he claims to have first talked to Portfolio.[49]  And some of these calls were made by the same "Quincy" that Mr. Newton claims first contacted him on behalf of Portfolio.[50]

---

[41] *See id.* at 82.
[42] *See id.* at 83-84.
[43] *See id.*
[44] *See* Newton Dep, at 83-84.
[45] *See id.* at 68-69.
[46] *See id.*
[47] *See* Newton Call Log.
[48] *See id.*
[49] *See* Newton Dep., at 119-121.
[50] *See id.*

Also, during the same timeframe, Mr. Newton claims to have received calls from a similarly named debt collector, _Consumer_ Recovery Associates, L.L.C. He filed suit against Consumer Recovery in June 2011.[51] He alleged that it had been calling him for "at least" the past four months—from February 2011 to June 2011—and that they violated the FDCPA by making harassing statements and continuously calling him.[52]

When asked about what led to the dispute, Mr. Newton's story was eerily familiar. He testified that he first received a call from a "black guy."[53] He then was called by a woman claiming to be the "black guy's" supervisor.[54] Later he received another call from the same woman, who forwarded him to her supervisor, "some Italian."[55] And once the Italian guy started "rattling off," Mr. Newton said "put somebody on the phone that speak English," and hung-up.[56]

This story shares several common threads to his purported calls with Portfolio. The time periods are similar (April 2011 to August 2011 for Portfolio, and February 2011 to June 2011 for Consumer Recovery); they both involve a lady, "black guy," and "Italian" guy; and, in both stories, Mr. Newton asked for "somebody on the phone that speak[s] English." Regardless of whether this is a coincidence or something more, even under Mr. Newton's current story, Portfolio is entitled to judgment as a matter of law on all of Mr. Newton's claims.

## III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the court "shall grant summary judgment if the movant shows that there is _no genuine dispute as to any material fact_ and the

---

[51] _See_ Verified Civil Complaint, _Newton v. Consumer Recovery Assocs., L.L.C._, No. 2:11-cv-00476-MHW-MRA (S.D. Ohio).
[52] _See id._ at ¶¶11, 14.
[53] _See_ Newton Dep., at 13.
[54] _See id._ at 14.
[55] _See id._ at 15.
[56] _See id._ at 15.

movant is entitled to judgment as a matter of law."[57]   The movant bears the initial burden of "demonstrating the absence of a genuine issue of material fact";[58] after this burden is met, the non-movant must "come forward with 'specific facts showing that there is a genuine issue for trial.'"[59] Although the court must draw inferences in the light most favorable to the non-movant, the non-movant must still point to specific parts of the record that present material issues of fact, and, in doing so, must adduce more than just a scintilla of evidence.[60]

## IV.   ARGUMENT

The FDCPA prohibits certain types of conduct in connection with debt collection to curb abusive debt-collection practices.[61]  Some of the FDCPA's sections only protect "consumers"—a FDCPA-defined term that means a "natural person obligated or allegedly obligated to pay any debt"—whereas other provisions are not so limited.[62]  Further, an "action to enforce any liability created by [the FDCPA] may be brought . . . *within one year* from the date on which the violation occurs."[63]  The Sixth Circuit Court of Appeals, as well as other courts, has interpreted this provision to bar any claim that is brought more than one-year after a purported violation.[64]

In his Complaint, Mr. Newton asserts the following FDCPA claims: (1) Section 1692d claim alleging Portfolio engaged in conduct the natural consequence of which is to harass; (2) Section 1692d(5) claim alleging Portfolio caused his telephone to ring repeatedly; (3) Section 1692e and 1692e(2)(A) claims alleging Portfolio falsely represented the legal status of the debt or made some other misleading representation; (4) Section 1692e(5) claim that Portfolio

---

[57] Fed. R. Civ. P. 56(a) (2012) (emphasis added).
[58] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[59] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation omitted).
[60] *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).
[61] *See id.* at §§ 1692d, 1692e.
[62] *See id.* at § 1692a(3); *see also, e.g., id.* at § 1692g.
[63] *See id.* at § 1692k(d).
[64] *See, e.g., Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010); *see also Amadasu v. Holloway Credit Solutions, LLC*, No. 1:08cv36, 2009 WL 948767, at *5 (S.D. Ohio Apr. 3, 2009) (stating that "the statute of limitations begins to run from the 'date on which the violation occurs.") (*citing* 15 U.S.C. § 1692k(d)).

threatened to take action it could not legally take; (5) Section 1692f claim alleging Portfolio used unconscionable means to collect a debt; and (6) Section 1692g claim that Portfolio failed to send an initial written communication to him.   Even under Mr. Newton's version of the facts, however, Portfolio is entitled to summary judgment in full.

> **A.** **The 1692d claim fails because the only conversation that is within the statute of limitations cannot reasonably be interpreted as harassing.**

Mr. Newton makes two, separate claims under Section 1692d of the FDCPA.  One he brings under the general Section 1692d, which prohibits a debt collector from engaging in conduct "the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[65]  The other alleges a violation of the more specific Section 1692d(5), or that Portfolio caused his telephone to ring "repeatedly or continuously" with the intent to harass him."[66]  The first claim relates to the purported content of conversations with Portfolio, whereas the second relates to the call volume and frequency.

Starting with the first, under Mr. Newton's most recent of several stories, he spoke to Portfolio representatives during three separate phone calls.[67]   Two of these conversations occurred on the same day in the middle of March 2011,[68] and the third in August 2011.[69]

As an initial matter, the automatically generated Newton Call Log proves that _none of these conversations actually took place._  And Mr. Newton has not provided his personal call records, despite Portfolio's Discovery Requests asking him to do so.[70]

But even if this were not true, his claim fails for two reasons.  First, two of the three conversations purportedly took place in March 2011, meaning they are outside of the FDCPA's

---

[65] *See id.* at § 1692d; *see also* Complaint, at ¶16(a).
[66] *See id.* § 1692d(5); *see also* Complaint, at ¶16(b).
[67] *See* Newton Dep., at P. 94-96.
[68] *See id.* at 95-96.
[69] *See id.* at 96.
[70] *See* Discovery Responses, at Document Request 7.

one-year statute of limitations. Second, even according to Mr. Newton, the final conversation was too insignificant to be considered harassing as a matter of law.

      *1.     The alleged March 2011 calls are outside the statute of limitations.*

As previously indicated, the Sixth Circuit—and other courts across the country—has interpreted Section 1692k(d) to bar any claim that is brought more than one-year after a purported FDCPA violation.[71]

    Mr. Newton testified that two of the three conversations he had with Portfolio occurred in March 2011 on the same day.[72] But Mr. Newton did not file this lawsuit until August 2, 2012, over a year later.[73] As such, even if either of these calls constituted an FDCPA violation, they cannot provide the basis for Mr. Newton's claim because of the statute of limitations.

      *2.     No reasonable juror could conclude that the August 2011 call had the natural consequence of harassing Mr. Newton.*

The structure of Section 1692d contains a general proscription against conduct that has the "natural consequence" of harassing party, then provides a list of specific examples of this type of conduct.[74] These include using extreme means to collect a debt, such as threats of violence or criminal acts, using profane or obscene language, or publishing a list of consumers.[75]

Perhaps noticing the extremity of conduct necessary to violate Section 1692d's specific provisions, courts have required plaintiffs to show particularly egregious circumstances to violate 1692d, and have granted summary judgment to defendants when this high bar is not reached. To provide but a few examples, courts have granted summary judgment to defendants when a debt

---

[71] *See, e.g.*, *Ruth v. Unifund CCR Partners*, 604 F.3d 908, 910 (6th Cir. 2010); *see also Amadasu v. Holloway Credit Solutions, LLC*, No. 1:08cv36, 2009 WL 948767, at *5 (S.D. Ohio Apr. 3, 2009) (stating that "the statute of limitations begins to run from the 'date on which the violation occurs.") (*citing* 15 U.S.C. § 1692k(d)).
[72] Newton Dep., at 95-96.
[73] *See generally* Complaint.
[74] *See* 15 U.S.C. § 1692d.
[75] *See id.*

collector's representative (1) yelled at a plaintiff and hung-up the phone;[76] (2) "laughed cruelly"

at the plaintiff during a call;[77] (4) called the plaintiff a "liar" and, later, sent written letters stating

that the debt was "due in full NOW";[78] (5) called the plaintiff a "liar," laughed at him, and

accused him of making false excuses to not pay his debt.[79]

    The August 2011 call falls well short of this high bar.  In fact, Mr. Newton even *admitted*

in his deposition that this August 2011 call was not harassing.[80]  Not only was it short, but

nothing harassing was said, as Mr. Newton's deposition testimony shows:

> Q.    Did [the Portfolio representative] introduce himself, whether he had to or not?
> A.    Yeah, he finally told me who he was.
> Q.    How did he start off the conversation, do you remember?
> A.    The conversation led off to where I think we got on bad terms and I'm sorry about the [March 2011] conversation we had.  And really we just need to collect the debt.  He say all he's paid to do was collect a debt.
>
>     I said okay.  I say but look what you did.  I don't want to talk to you.  I just don't want to talk to you.  Put somebody else on the phone that I can talk to and that would be fine.  He say I'm the only one got your paperwork.  I say you and I got no conversation, and I hung up.
> Q.    And when he did call, did he introduce himself as working for Portfolio Recovery Associates?
> A.    Yes, he did.
> Q.    And it sounds like this is a pretty brief conversation.
> A.    Yeah.[81]

    Nor do any of the Call Recordings demonstrate harassment.  The January 27,

2012 Call Recording contains a lengthy discussion about whether the debt is legitimate,

during which the Portfolio representative repeatedly refers to Mr. Newton as "sir."[82]  If

anyone can be accused of being harassing during that conversation, it is Mr. Newton,

---

[76] *See Thomas v. LDG Financial Servs.*, 436 F. Supp 2d 1370, 1372 (N.D. Ga. 2006).

[77] *See Gallagher v. Gurstel, Staloch & Chargo, P.A.*, 645 F. Supp. 2d 795, 798-99 (D. Minn. 2009).

[78] *See Smith v. Accounts Research, Inc.*, No. 3:10-cv-213, 2012 WL 289835, at *6-7 (E.D. Tenn. Jan. 31, 2012).

[79] *See Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 809 (N.D. Ill. 2010).

[80] *Id.* at 159-60 ("Q.  You said that [August 2011] conversation was harassing too?  A.  No, I don't think it was.  It was merely just an apology to try to get on my good side and say can we get this taken care of.")

[81] Newton Dep., at 83-84.

[82] *See generally* January 27, 2012 Recording.

who yells at the Portfolio representative.[83]  Similarly, in the other three Call Records, the

Portfolio representatives are polite and say nothing that could be viewed as harassing.[84]

Just like the alleged August 2011 call, no reasonable juror could view any of these Call

Recordings as harassing, making summary judgment appropriate.

>    **B.    The 1692d(5) claim fails because Portfolio did not call and converse with Mr. Newton at a sufficiently high volume to violate 1692d(5).**

Under Section 1692d(5), a debt collector violates the FDCPA if it "cause[es] a telephone

to ring or engag[es] any person in telephone conversation repeatedly or continuously with intent

to annoy, abuse, or harass any person at the called number."[85]  Even though there is no "bright

line rule" for the number of calls necessary to support an inference of intent, courts routinely

grant summary judgment when the amount is below a certain number.  For instance, last year in

*Durthaler v. Accounts Receivable Management, Inc.*, this Court granted summary judgment

when a FDCPA defendant made 32 calls over 73 days, and noted that other courts have routinely

granted summary judgment at far higher call frequencies.[86]  Other courts within the Sixth Circuit

have reached similar conclusions, including granting summary judgment when (1) there were

only 20-60 calls over a 1-month period,[87] and (2) there were 350 calls over an 8-month period.[88]

Several courts have also held that an even higher frequency of calls will not constitute a

1692d(5) violation when a significant proportion of those calls never connected to the debtor.[89]

These courts have suggested this demonstrates "difficulty of reaching Plaintiff, rather than an

---

[83] *See* January 27, 2012 Recording, at 2-4.
[84] *See generally* February 8, 2012 Recording, February 10, 2012 Recording, and March 7, 2012 Recording.
[85] *See id.* at 1692d(5).
[86] *See Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d 485, 490 (S.D. Ohio 2012).
[87] *See Saltzman v. I.C. Sys., Inc.*, No. 09-10096, 2009 WL 3190359, at *7 (Sept. 30, 2009 E.D. Mich.).
[88] *See Pugliese v. Professional Recovery Serv., Inc.*, No. 09-12262, 2010 WL 2632562, at *9-10 (June 29, 2010 E.D. Mich.).
[89] *See, e.g., Saltzman*, 2009 WL 3190359, at *7 (finding it significant that the record indicated a "significant disparity between the number of telephone calls placed by Defendant and the number of actual successful conversations with the Plaintiff.")

intent to harass,"[90] thus warranting summary judgment even when the debt collector called as much as once or twice every day.[91]

Here, even though Mr. Newton's oral testimony starkly differs from the automatically generated Newton Call Log, summary judgment is warranted under either set of the facts. Mr. Newton testified that, during the time period within the statute of limitations—that is, starting in August 2011—Portfolio called twice a week, and did so until April 2012.[92] This 274-day time period encompassed 43 weekends, meaning, according to Mr. Newton, there were 86 calls placed. And out of these 86, Mr. Newton answered *one* call, or roughly 1%.[93] A reasonable juror could only conclude that this call volume is not sufficiently high to violate Section 1692d(5), especially given Portfolio's difficulty in reaching Maureen Newton.

And the Newton Call Log shows that Portfolio called the 5016 Number only 18 times during the span of roughly 4 months.[94] That is, a substantial amount of the calls described by Mr. Newton never actually happened.[95] In line with this Court's decision in *Durthaler*,[96] 18 calls over the course of 4 months falls well short of what is required to support a Section 1692d(5) claim. Therefore, regardless of whether the Newton Call Log or Mr. Newton's oral testimony is believed, Portfolio is entitled to summary judgment.

### C. Mr. Newton's 1692e and 1692e(2)(a) claims fail because he lacks standing and they are undermined by his own testimony.

Section 1692e prohibits a debt collector from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt."[97] Likewise, the more

---

[90] *See id.* at *7.
[91] *See Pugliese*, 2010 WL 2632562, at *10.
[92] Newton Dep., at 68.
[93] *Id.* at 96.
[94] *See* Newton Call Log.
[95] *See id.*
[96] 854 F. Supp. 2d at 490.
[97] 15 U.S.C. § 1692e.

specific Section 1692e(2)(a) prohibits a collector from making a false representation about a debt's "character, amount, or legal status."[98]

Mr. Newton's claims under both sections fail as a matter of law for two reasons.  First, because he is not a "consumer," he lacks standing to assert them.  Also, his testimony explicitly contradicts each and every justification he has provided for these claims during this litigation.

> 1.    *Mr. Newton lacks standing to assert a claim under Section 1692 or any of its subsections because he knew he was not a "consumer."*

Even though the language of Section 1692e does not state that it only applies to "consumers," courts within the Sixth Circuit have held that plaintiffs cannot sustain claims under this Section when they knew that the defendant was not attempting to collect a debt owed by them.[99]  These courts have reasoned that even the least sophisticated consumer would not be misled when that individual knew it was not the subject of the collection efforts.[100]

That is exactly the case with Mr. Newton.  In three of the four Call Recordings, Portfolio asks for Maureen Newton specifically, Mr. Newton identifies himself as her husband, and then Portfolio indicates that it is attempting to collect a Capital One Debt *owed by Maureen Newton*.[101]  Quite clearly, Mr. Newton knew Portfolio was not trying to reach him.

And Mr. Newton's ever-changing story does not change this result.  Mr. Newton tells four different stories of why Portfolio was calling: (1) to collect his Mastercard debt,[102] (2) to collect a Cash Net debt,[103] (3) he did not know,[104] and, again, (4) to collect the Cash Net debt.[105]  This constantly shifting position suggests that he currently lacks personal knowledge on this

---

[98] *See id.* at § 1692e(2)(a).
[99] *See, e.g.*, *Kaniewski v. Nat'l Action Fin. Servs.*, 678 F. Supp. 2d 541, 546 (E.D. Mich. 2009) (citation omitted).
[100] *See Kaniewski*, 678 F. Supp. 2d at 546.
[101] *See, e.g.*, January 27, 2012 Recording, at 1; February 10, 2012 Recording, at 2; March 7, 2012 Recording, at 1.
[102] *See* Complaint, at ¶11.
[103] *See* Discovery Responses, at Interrogatory 24.
[104] *See* Newton Dep., at 40.
[105] *See* Newton Dep., at 118.

subject.  And courts have held that testimony cannot rebut a motion for summary judgment when it is evident that the testifying party lacked personal knowledge.[106]  Therefore, Mr. Newton lacks standing to assert a Section 1692e claim, making summary judgment appropriate.

> 2. *Mr. Newton's own testimony contradicts his ever-changing grounds for these claims.*

Even ignoring the standing issue, it is also significant that Mr. Newton's claims under Sections 1692e and 1692e(2)(A) of the FDCPA have continuously changed, and continue to remain unclear.  Mr. Newton first claimed that Portfolio violated these Sections by failing to inform him that payment on the debt could have the effect of restarting the statute of limitations.[107]  Then, in his Discovery Responses, he purports that it is because Portfolio misrepresented the amount of the debt and promised to send him an "affidavit" related to the debt.[108]  Finally, during his deposition, Mr. Newton claimed that Portfolio did not disclose the debt's original creditor.[109]  All of these theories fail.

First, Mr. Newton's testimony expressly contradicts the theory that Portfolio did not discuss the statute of limitations.  The law only prohibits a debt collector from *misrepresenting* the legal status of a debt.[110]  Mr. Newton admitted in his Discovery Responses and during his deposition, however, that Portfolio never even mentioned the statute of limitations.[111]

Nor can Mr. Newton's second rationale—that Portfolio misrepresented the balance of the debt and said it would send him an "affidavit"—form the basis for a Section 1692e violation.

---

[106] *See, e.g.*, *Millsap v. CCB Credit Services, Inc.*, 2008 WL 8511691, at *3 n.5 (E.D. Mich. 2008) (unreported) (suggesting that a testifying party must evidence "personal knowledge" to use the testimony in opposition for a motion for summary judgment).
[107] *See* Complaint, at ¶15.
[108] Discovery Responses, at Interrogatories 15, 16.
[109] Newton Dep., at 160.
[110] *See, e.g.*, *Wallace v. Capital One Bank*, 168 F. Supp. 2d 526, 529 (D. Md. 2001) (holding that a debt collector cannot violate the FDCPA by sending a letter that is silent on whether the debtor's payment will revive the statute of limitations).
[111] *See* Discovery Responses, Requests for Admission 4 and 5.

First, Mr. Newton testified during his deposition that the promise to send an affidavit occurred only during the first March 2011 conversation.[112] Therefore, even if this ambiguous allegation in some way violated the FDCPA—which is far from clear—it cannot give rise to a claim.

And Mr. Newton's claim that Portfolio misrepresented the balance of the debt is, again, disproven by his own testimony. Mr. Newton claimed in his Complaint that Portfolio was attempting to collect a Mastercard debt, then stated in his Discovery Requests that it was a Cash Net debt, then testified during his deposition that he had no idea what debt Portfolio was attempting to collect, then later during that *same deposition* claimed he "assumed" it was the Cash Net debt.[113] Mr. Newton cannot claim that Portfolio misrepresented a debt's balance when he cannot even decide what debt he is talking about.

Finally, Mr. Newton's last theory fails because he admits that all of the Portfolio representatives identified themselves as being affiliated with Portfolio during each call.[114] Mr. Newton did not allege in his deposition that Portfolio affirmatively misrepresented anything about the debt, only that the callers would not identify the original creditor.[115] Even if this were true—which is unlikely because the conversations never took place—this cannot form the basis of a Section 1692e or 1692e(2)(a) violation as a matter of law because no affirmative misrepresentation took place. Portfolio is thus entitled to summary judgment on these claims.

    **D.**    **The 1692e(5) claim fails as a matter of law because of the statute of limitations and a lack of standing.**

---

[112] *See* Newton Dep., at 54.
[113] *See id.* at 40.
[114] *See id.* at 83-84, 125.
[115] *See id.* at 40.

17

Section 1692e(5) prohibits a debt collector from threatening to "take any action that cannot legally be taken or that is not intended to be taken."[116]  This typically involves a debt collector threatening to sue the debtor without legal grounds or when it has no intent to do so.[117]

Even under Mr. Newton's version of the events, this claim fails as a matter of law.  As a preliminary matter, again, the Newton Call Log shows that none of these conversations actually took place.[118]  And even if this were not true, again, Mr. Newton lacks standing because, as the Call Recordings demonstrate, he knew Portfolio was not attempting to collect a debt from him.[119]  Further, in addition to these two deficiencies, the two purported March 2011 calls are outside the statute of limitations and, thus, cannot form the basis for a claim under Section 1692e(5).

In the August 2011 call, Mr. Newton described the contents of that purported call in detail, and nowhere did the Portfolio representative make any threat.[120]  Indeed, Mr. Newton even _admitted_ this during his deposition.[121]  This provides yet another reason why Mr. Newton's Section 1692e(5) claim fails as a matter of law.

> **E.  The 1692f claim fails because Mr. Newton lacks standing and he does not allege any conduct that is not already governed by another FDCPA section.**

Section 1692f of the FDCPA states that a debt collector may not use "unfair or unconscionable means" while attempting to collect a debt.[122]  Mr. Newton's claim under this Section fails for two reasons: because (1) he lacks standing to assert it, and (2) he has not identified any conduct that is not already governed by a different FDCPA provision.

---

[116] 15 U.S.C. § 1692e(5).
[117] _See, e.g., Bentley v. Great Lakes Collection Bureau_, 6 F.3d 60, 62 (2nd Cir. 1993) (suggesting it might be an FDCPA violation for a third-party collector to threaten legal action when that action had not been previously authorized by the creditor).
[118] _See_ Newton Call Log.
[119] _See generally_ January 27, 2012 Recording; February 10, 2012 Recording; March 7, 2012 Recording; _see also supra_ Sect. IV.C.1.
[120] _Id._ at 83-84.
[121] Newton Dep., at 161-62.
[122] 15 U.S.C. § 1692f.

        1.    *Mr. Newton lacks standing to assert a claim under Section 1692f because he knew he was not a "consumer."*

Even though Section 1692f does not state that it applies to only FDCPA "consumers," courts within the Sixth Circuit have interpreted it as having such a requirement.  For instance, this Court has held that plaintiffs cannot maintain an action under Section 1692f when they knew they were not allegedly obligated to pay a debt,[123] as have other courts in the Sixth Circuit.[124]

Again, the Call Recordings conclusively show that Mr. Newton knew Portfolio was attempting to collect a debt from his *wife*, not him.[125]  Therefore, he lacks standing to assert a claim under Section 1692f as a matter of law, and summary judgment is proper.

        2.    *The Section 1692f claim fails because Mr. Newton has not identified any conduct that would not be covered by a different FDCPA provision.*

Section 1692f goes on to identify specific actions that are "unfair or unconscionable," including collecting amounts that are not authorized under the debt agreement or accepting, soliciting, or depositing significantly postdated checks.[126]  This is a non-exclusive list, which has led courts to conclude that 1692f is meant to "sanction conduct that the FDCPA fails to address specifically."[127]  It thus stands to reason that an act cannot violate Section 1692f if it is of the type of acts that are already prohibited under another FDCPA section.[128]

Mr. Newton has not alleged any type of act that would not already be addressed by a different section of the FDCPA.  Even disregarding the statute of limitations and the numerous changes in Mr. Newton's version of the facts, Mr. Newton's claims derive from four alleged

---

[123] *See Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819, 826 (S.D. Ohio 2008).

[124] *See, e.g.*, *See Kaniewski*, 678 F. Supp. 2d at 546.

[125] *See, e.g.*, January 27, 2012 Recording, at 1-2; *see also supra* Sect. IV.C.1.

[126] *See id.*

[127] *See, e.g.*, *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996) (citing *Masuda v. Thomas Richards & Co.*, 759 F. Supp. 1456, 1461 n.10 (C.D. Cal. 1991)).

[128] *See, e.g.*, *Millsap v. CCB Credit Servs., Inc.*, No. 07-11915, 2008 WL 8511691, *10 (E.D. Mich. Sept. 30, 2008) (stating that, "[b]ecause these more specific claims [brought under other FDCPA provisions] lack evidentiary support, Plaintiff's more generalized (and equally unsupported) claim of 'fair or unconscionable' practices also must fail").

acts, each of which would be well within the ambit of an FDCPA section that is not Section 1692f. Specifically, Mr. Newton claims that Portfolio: (1) failed to send him an initial written notice, an omission that would be governed by Section 1692g; (2) made offensive and harassing statements during certain phone conversations, which is conduct that is covered in Section 1692d; (3) caused his telephone to ring repeatedly and continuously with intent to harass him, which is addressed in Section 1692d(5); and (4) did not disclose significant details during its collection attempts, which would be governed by Section 1692d(6) or 1692e. Mr. Newton has not alleged conduct not already covered by a different FDCPA section, so his claim fails.

### F. The 1692g claim fails because Mr. Newton lacks standing, the claim is time-barred, and Portfolio *did* send the G Notice required by Section 1692g.

Under Section 1692g of the FDCPA, "[w]ithin five days after the initial communication with a *consumer* in connection with the collection of any debt, the debt collector shall . . . send the consumer a written notice."[129] This notice must contain specific information, including the amount of the debt, the creditor owed, and certain statements about the consumer's right to request verification or information about the debt within 30 days.[130]

Here, Mr. Newton's claim that Portfolio violated Section 1692g fails for two reasons. First, Mr. Newton is not a "consumer" under the FDCPA because it was his wife, not him, that was obligated to pay a debt to Portfolio.[131] He thus lacks standing to assert such a claim.

Further, Mr. Newton's 1692g claim is barred because Portfolio did send the required written notice. Portfolio sent this G Notice on August 29, 2011, which was, according to the Newton Call Log, three months before it called the 5016 Number.[132] Portfolio sent this G Notice

---

[129] *See* 15 U.S.C. § 1692g (emphasis added).
[130] *See id.* at § 1692g(1)–(5).
[131] *See* Reese Aff., at ¶7; *see also* Aff. of Assignment.
[132] *See* Reese Aff., at ¶8; *see also* G Notice. Significantly, if Mr. Newton claims a violation of 1692g on the grounds that his initial contact with Portfolio occurred in March 2011, his claim would also be barred by the FDCPA's

to the address it received for Maureen Newton from Capital One, and it was never returned to Portfolio in the mail.[133]  It was not until this litigation that Portfolio learned Maureen Newton no longer lived at that address.  Portfolio thus had a reasonable, good-faith basis for believing that she received the notice.  Therefore, Mr. Newton's claim fails even if he had standing.

## IV.  CONCLUSION

For the preceding reasons, Defendant Portfolio Recovery Associates, LLC respectfully requests that the Court grant it judgment against Plaintiff Vernice Newton as follows:

(1)  Judgment in Portfolio's favor on every claim set forth in the Complaint;

(2)  Pursuant to 15 U.S.C. § 1692k(a)(3) and applicable case law,[134] reasonable attorneys' fees that it has incurred in this matter;

(3)  Portfolio's costs incurred in this action; and

(4)  Any other relief at law or in equity that this Court deems just and appropriate.

Respectfully Submitted,

_/s/  Ryan S. Lett_____
Ryan S. Lett (0088381)
FROST BROWN TODD LLC
3300 Great American Tower
301 East Fourth Street
Cincinnati, Ohio 45202
Phone:  (513) 651-6118
Fax:  (513) 651-6981
rlett@fbtlaw.com

---

statute of limitations.  *See, e.g.*, 15 U.S.C. § 1692k(d).  Under this set of facts, Portfolio would have been required to send the G Notice in March 2011, meaning any violation of this requirement occurred over a year prior to the Complaint being filed in August 2012.
[133] *See* Reese Aff., at ¶8.
[134] *See, e.g.*, *Tucker v. CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D. Fla. 2010) (awarding sanctions to an FDCPA defendant in a similar case where the plaintiff's deposition testimony contradicted the allegations made in his complaint—which, like in this case, was verified by an affidavit and consisted of boilerplate allegations—and plaintiff's counsel failed to dismiss any of the claims asserted once these contradictions became evident).

*Attorney for Defendant Portfolio Recovery Associates, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing ***Motion for Summary Judgment*** was served on all registered ECF participants electronically through the Court's ECF System at the e-mail address registered with the Court this 15th day of March, 2013.

_/s/ Ryan S. Lett_____
Ryan S. Lett (0088381)

CINLibrary LR12625.0599115  2707125vvvvvvv1