# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

VERNICE NEWTON,

                Plaintiff,                          **Case No. 2:12-cv-698**
                                                            **JUDGE SMITH**

   **v.**                                                          **Magistrate Judge Abel**

PORTFOLIO RECOVERY
ASSOCIATES, LLC,

                Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Portfolio Recovery Associates, LLC's

Motion for Summary Judgment (Doc. 16).  The motion is fully briefed and ripe for disposition.

For the reasons that follow, the Court **GRANTS** Defendant's motion.

## I.     Background

This matter arises under the Federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692

*et seq*. ("FDCPA").  Defendant is a company that purchases "charged-off"[1] consumer debt and

attempts to collect the debt by calling the debtor on each account.  Using proprietary software,

Defendant maintains records of all activity on an account, including call logs.  The call logs

record a variety of information, including the account number on which the call was placed, the

date and time, the duration, and a result code.  Certain calls are automatically recorded.

Information within the system is searchable based on specified parameters.

In July 2011, Defendant purchased a charged off account in the name of Maureen B.

---

[1] To "charge off" a debt is to treat the account receivable as a loss or expense because
payment is unlikely.  Black's Law Dictionary (9th ed. 2009).  That is, the debt is treated as a
"bad debt."  *Id.*

Newton from Capital One Bank (USA), National Association ("Capital One").  At the time of the transfer, the end balance on the account (the "Capital One Debt") was documented as $947.68.  Maureen Newton is Plaintiff Vernice Newton's wife.  The couple moved to Ohio in 2002.  Prior to that, the couple resided in Nevada and then Texas.  Defendant has presented evidence that, after purchasing the Capital One Debt, Defendant sent a written notice, dated August 29, 2011, to Maureen's last-known address.  The notice contained the language required by 15 U.S.C. § 1692g(a)(1-5), and the notice was not returned to Defendant.

Defendant has produced a call log (the "Newton Call Log") showing all calls initiated by Defendant to the telephone number xxx-xxx-5016 (the "5016 Number"), which is the number Plaintiff shares with his wife.  The Newton Call Log demonstrates that all 18 calls to the 5016 Number that were initiated by Defendant occurred between November 23, 2011, and March 7, 2012.  The Newton Call Log also demonstrates that each of these calls was in regard to the Capital One Debt, and that of the 18 calls, 10 resulted in Defendant connecting to voicemail or a person at the 5016 Number.  Defendant has also produced transcripts of four recorded calls to the 5016 Number in which Plaintiff was the speaker.  These calls occurred on January 27, 2012, February 8, 2012, February 10, 2012, and March 7, 2012.

In August 2012, Plaintiff filed a Verified Complaint, alleging that Defendant violated the FDCPA.  In particular, Plaintiff's Verified Complaint alleged that Defendant violated 15 U.S.C. §§ 1692d, 1692e, 1692f, and 1692g, by repeatedly calling Plaintiff at three different numbers, including his mobile telephone number, in reference to a Mastercard credit card debt from 1993, failing to advise him that making a payment could restart the statute of limitations, and failing to meet its notification obligations in relation to its attempt to collect the Mastercard debt.  Plaintiff seeks statutory damages and costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k.  In March 2013, Defendant filed its Motion for Summary Judgment, which is fully briefed and

ripe for disposition. Defendant also requests attorneys' fees as a sanction against Plaintiff.

## II.     Summary Judgment Standard

The standard governing summary judgment is set forth in Rule 56 of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.,* 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must view all the facts, evidence and any inferences that may permissibly be drawn from the facts, in favor of the nonmoving party. *Matsushita*, 475 U.S. at 587. The Court will ultimately determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Liberty Lobby*, 477 U.S. at 251-53. Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. *Lashlee v. Sumner*, 570 F.2d 107, 111 (6th Cir. 1978). The Court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. *Liberty Lobby*, 477 U.S. at 249; *Weaver v.*

*Shadoan*, 340 F.3d 398, 405 (6th Cir. 2003).

In responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting *Liberty Lobby*, 477 U.S. at 257). The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. *Liberty Lobby*, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Phillip Morris Companies, Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The Court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. *Liberty Lobby*, 477 U.S. at 251-52; *see also Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.     Discussion

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). Thus, Congress enacted the FDCPA to address "abusive, deceptive, and unfair debt collection practices." 15 U.S.C. §

4

1692(a).

"Courts use the 'least sophisticated consumer' standard, an objective test, when assessing whether particular conduct violates the FDCPA." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611-12 (6th Cir. 2009) (quoting *Barany–Snyder v. Weiner*, 539 F.3d 327, 333 (6th Cir. 2008)).  Under the least sophisticated consumer test, the issue is whether there is a reasonable likelihood that an unsophisticated consumer who is willing to consider carefully the contents of a communication might yet be misled by them.  *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 172 (6th Cir. 2011).  This test is designed "to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd."  *Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 438 (6th Cir. 2008).  "The least sophisticated debtor standard is 'lower than simply examining whether particular language would deceive or mislead a reasonable debtor.'"  *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999) (quoting *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1227 (9th Cir. 1988)).

Defendant argues that it is entitled to summary judgment on each of Plaintiff's claims under the FDCPA.  In response to Defendant's Motion for Summary Judgment, Plaintiff argues that there are genuine issues of material fact as to his claims that Defendant violated 15 U.S.C. §§ 1692d, 1692e, and 1692f.  Plaintiff does not directly respond to Defendant's argument that it is entitled to summary judgment as to his § 1692g claim.  Plaintiff's claims will be addressed in turn.  After addressing Plaintiff's claims, the Court will discuss Defendant's request for attorneys' fees.

### A.    Section 1692d Claim

Title 15 U.S.C. § 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with

5

the collection of a debt."  The section lists specific examples of conduct that violates this

provision, including "[c]ausing a telephone to ring or engaging any person in telephone

conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the

called number."  15 U.S.C. § 1692d(5).

Plaintiff asserts that he has shown Defendant's intent to harass him in view of the

excessive frequency of the telephone calls from Defendant to the 5016 Number, and because

Defendant continued to call him after he told Defendant that he was unwilling to pay the debt.

Plaintiff also argues that his harassment claim is not appropriate for dismissal at the summary

judgment stage because it is closely tied to the underlying circumstances, and, as such, is

ultimately a decision for the jury to determine.  Defendant argues that the Newton Call Log

cannot reasonably be viewed as demonstrating excessive call frequency, that the evidence that

Defendant called the 5016 Number after Plaintiff told Defendant that he would not pay on the

debt does not sufficiently support his claim of harassment, and that this claim can be resolved at

the summary judgment stage.

In applying § 1692d, "[c]ourts have followed the Federal Trade Commission's

interpretations, finding that the term 'repeatedly' means 'calling with excessive frequency under

the circumstances,' and that 'continuously' means 'making a series of calls, one right after the

other.' "  *Hicks v. America's Recovery Solutions*, LLC, 816 F. Supp. 2d 509, 515 (N.D. Ohio

2011) (citations omitted). "There is no bright line rule regarding the number of calls which

creates the inference of intent."  *Hicks*, 816 F. Supp. 2d at 515.  Even so, "Congress has indicated

its desire for the courts to structure the confines of § 1692d."  *Harvey v. Great Seneca Fin.

Corp.*, 453 F.3d 324, 330 (6th Cir. 2006) (citing *Jeter v. Credit Bureau*, 760 F.2d 1168, 1179

(11th Cir. 1985)).  The issue ultimately resolves to whether "the nature of telephone calls,

including their frequency, substance, or the place to which they are made, provides grounds to infer a debt collector's intent to annoy, abuse, or harass without any other evidence of the debt collector's motive in calling." *Durthaler v. Accounts Receivable Mgmt., Inc.*, 854 F. Supp. 2d 485, 489 (S.D. Ohio 2012) (Sargus, J.) (quoting *Brown v. Hosto & Buchan, PLLC*, 748 F. Supp. 2d 847, 852 (W.D. Tenn. 2010)).

Although the question of "whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury," dismissal of a § 1692d claim is appropriate "if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Harvey*, 453 F.3d at 330 (quoting *Jeter*, 760 F.2d at 1179). For example, in *Durthaler*, this Court analyzed the anti-harassment provision of the FDCPA, and found that while there is no bright-line rule that volume of calls can never be sufficient to demonstrate an intent to harass, the 32 calls placed in 73 days in that case were insufficient, without more, to demonstrate an intent to harass. *Id.* at 489. In reaching its conclusion in *Durthaler*, it was noted that there was no evidence "that the calls were made at an inconvenient time or place, that they were made after the Plaintiff repeatedly requested that they stop, or that they were made after the Plaintiff informed the Defendant that he was represented by counsel or a debt management company." *Id.* at 492. Thus, even when viewed in favor of the plaintiff, the call frequency found in *Durthaler* does not, in and of itself, have the natural consequence of harassing or abusing a debtor in violation of the FDCPA. Accordingly, and contrary to Plaintiff's argument, summary judgment on a § 1692d claim is appropriate if no reasonable jury could conclude that the evidence demonstrates an intent to harass.

Here, Plaintiff suggests that Defendant has violated § 1692d(5) by calling the 5016 Number excessively in an attempt to collect the Capital One Debt, and he argues that Defendant

acted in a harassing manner because Defendant continued to call the 5016 Number even though he told Defendant that he would not pay the debt and that he did not recall the origin or details of the debt. These arguments are not persuasive. Plaintiff does not dispute that the evidence shows that Defendant only called the 5016 Number 18 times, and never even twice on the same day, during a time-frame of approximately four months. (Doc. 16-4). This frequency of calls simply does not support an inference of intent to harass. *See Durthaler*. Furthermore, as in *Durthaler*, there is no evidence that the calls were made at an inconvenient time or place, that they were made after Plaintiff repeatedly requested that they stop, or that they were made after Plaintiff informed Defendant that he was represented by counsel or a debt management company.

The Court is unconvinced by Plaintiff's argument that Defendant harassed him by continuing to call despite his statements that he would not pay. In making this argument, Plaintiff does not address the fact that Defendant continued to pursue repayment of the debt by his wife. In this regard, Plaintiff does not challenge Defendant's assertion that he shared the 5016 Number with his wife, and that Defendant was trying to collect the Capital One Debt from his wife. The record contains transcripts of four of the answered calls to the 5016 Number, and on each of these occurrences Plaintiff answered and Defendant's representative initially asked to speak with Maureen. During three of the four conversations, Plaintiff challenged the basis of Plaintiff's attempt to collect on the Capital One Debt, stating in part that he and his wife "have no Capital One account," that Defendant has "the wrong information," and that he was "not going (inaudible) people call my house and harass me about a 13 year old debt." (Doc. 16-8, Tr. of Mar. 7, 2012 Tele. Conversation; Doc. 16-6, Tr. of Feb. 10, 2012 Tele. Conversation; Doc. 16-5, Tr. of Jan. 27, 2012 Tele. Conversation).

The fact that Defendant continued to call the 5016 Number despite Plaintiff's challenge

to the underlying basis of the debt, and stated unwillingness to pay the debt, does not demonstrate an intent to harass, especially in view of the fact that Defendant was primarily attempting to obtain payment from Plaintiff's wife.  In this regard, Plaintiff has not shown that Defendant had no basis to seek collection from his wife on the Capital One Debt.  Furthermore, the FDCPA expressly provides that, to be effective, a consumer's request that a debt collector cease further communications must be in writing.  *See* 15 U.S.C. § 1692c(c) ("If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except [for limited purposes].").

Therefore, Plaintiff's claim under § 1692d fails as a matter of law.

**B.    Section 1692e Claim**

Pursuant to 15 U.S.C. § 1692e, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."  This section contains a list of conduct that constitutes a violation of the section.  For example, it is a violation for a debt collector to make a "false representation of . . . the character, amount, or legal status of any debt," or to use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. § 1692e(2, 10).  Whether language used by a debt collector is deceptive or misleading is determined from the perspective of the least-sophisticated consumer.  *See Hartman*, *supra*.  That is, "[w]hether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions."  *Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012).  The statement must be materially false or

misleading, that is, the statement must be technically false, and one which would tend to mislead or confuse the reasonable unsophisticated consumer. *Id.* at 326–27. The claim under § 1692e must not be "based on frivolous misinterpretations or nonsensical interpretations of being led astray." *Fed. Home Loan Mortgage Corp. v. Lamar*, 503 F.3d 504, 514 (6th Cir. 2007).

Under § 1692k(c), however, a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." This bona fide error defense applies to mistakes of law as well as to clerical errors. *Durthaler*, 854 F. Supp. 2d at 493 (citing *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 538 F.3d 469, 476 (6th Cir. 2008)). The Supreme Court has held, however, that the bona fide error defense does not excuse "violations resulting from a debt collector's mistaken interpretation of the legal requirements of the FDCPA." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 576 (2010). "To qualify for the bona fide error defense, a debt collector must prove by a preponderance of the evidence that: (1) the violation was unintentional; (2) the violation was a result of a bona fide error; and (3) the debt collector maintained procedures reasonably adapted to avoid any such error." *Jerman*, at 476–77.

In the case at bar, Plaintiff argues that one of Defendant's representatives made false or misleading statements in connection with the attempted collection of the Capital One Debt. As the sole basis of support for this argument, Plaintiff cites his conversation with Defendant's representative on January 27, 2012 (the "January 27 conversation"). The following is a transcript of that conversation:

VN[2]:   Hello.
PRA[3]:  Hi, may I speak with Maureen?
VN:     Who is this?
PRA:    This is Rita.
. . .
VN:     Where are you from?  The pharmacy?
PRA:    No, Sir.  I'm calling from Portfolio Recovery Associates.
. . .
VN:     What is that?
PRA:    I'm handling a personal business matter for Ms. Maureen.
VN:     Hey, baby, listen – Maureen's my wife.
PRA:    OK.  And your name?  I'll be glad to speak with you.
VN:     My name is Vernice.
. . .
PRA:    OK.  Last name Newton as well Sir?
VN:     Yeah.
PRA:    OK.  Well, my name is Rita like I said, and I'm calling from Portfolio
Recovery Associates in regards to the Capital One Visa account that's been
forwarded here for collections.
VN:     Nah, baby, we never had no Capital One Visa.
PRA:    OK.  Your wife is Maureen B. Newton?
VN:     Yeah.
. . .
PRA:    Now this account was actually opened in '99.  She paid on it until 2001
and then she stopped making her payments.  She even had –
VN:     (Inaudible) in 2001?
PRA:    Right.  She even had this included in her bankruptcy.
VN:     (Inaudible) account that – that's going on 11 years old.
PRA:    Yes, Sir.  She still has a balance.
VN:     And the statute of limitations hasn't run out on it?
PRA:    She still has a balance due on the account.
VN:     Yeah, I think the statute of limitations hasn't run out on it?
PRA:    The statute of limitations just means we can't sue you for it.
VN:     And the statute of limitations means if you can't sue me for it why would I
owe a balance?
PRA:    Because you didn't pay it all.
. . .
VN:     I'm trying to figure out, you know, that – she didn't owe any credit card
from Capital One.
PRA:    Yes, Sir, she even had this in her bankruptcy.
VN:     I had it.
PRA:    OK.
VN:     In my bankruptcy.

---

[2] "VN" refers to Vernice Newton.
[3] "PRA" refers to a representative of Portfolio Recovery Associates.

PRA:   OK.  And her name is on it.

. . .

PRA:   OK.  This doesn't even have your name on it.  I mean this –

VN:    Then I don't know how they got (inaudible)

PRA:   It has Maureen B. Newton on it.

VN:    It got it switched up, you know, that's what happened.  It just got switched up.  Maureen never had a credit card.  She ain't had a credit card, you understand, since the early 90's.  You understand?  And that was with –

PR:     OK.  This is in '99 and then paid on until 2001

VN:    OK, if you're looking at '99 and 2009 that's 10.  And that's going on 13 years ago.  You understand.  There's no way I'm going to let you keep calling me, harassing me about a debt that is 13 years old.

PRA:   Sir, this account, this account is still owed.

VN:    Hey, if it's owed or not –

PRA:   (Inaudible) services?

VN:    (Inaudible) what?

PRA:   You used the services.

VN:    I (inaudible) is it owed, all I have to do is call the Attorney General and find out how (inaudible) is it owed.

PRA:   OK, well like I say, I mean –

VN:    You know, because I'm not going to allow you to keep on calling me –

PRA:   This is an account that was opened –

VN:    I'm not going (inaudible) people call my house and harass me about a 13 year old debt.

PRA:   OK, then just take care of it and we won't have to call you.

VN:    No, I'm not going to take care of no debt, man.  I don't know nothing about you.

PRA:   Sir, I don't know anything about you either.

VN:    (Inaudible) they pass these debts along for people to try to collect on them where they can make some commission and all that kind of stuff (inaudible)

PRA:   OK, let me tell you, let me tell you –

VN:    And all that kind of stuff.  I ain't going to have that.

PRA:   I get paid the same whether you pay your account or not.

VN:    You know –

PRA:   It's not affecting me, it's affecting you.

VN:    (Inaudible) because you're getting paid off of somebody else that (inaudible) pay it.

PRA:   No, Sir.

VN:    I'm not going to pay you.

PRA:   I'm not asking you to pay me.  This is your account.

VN:    (Inaudible) out of my household.

PRA:   This is your wife's account.

VN:    Hey, her husband, then it's my debt – we married.  We ain't separated.

PRA:   Correct.  So if you don't want to take care of it then –

VN:    Her debt is my debt.

PRA:   You're correct.

12

VN:    And as I told you just then you're not going to get one penny.
PRA:   Alright.  Then I'll go ahead and notate the account that I did speak with you.
VN:    Yeah, you go ahead and do that (inaudible)
PRA:   (Inaudible) without payments on the account?
VN:    I already done taken care of (audible).
PRA:   Sir, this is not taken care of.
VN:    This is (inaudible).
PRA:   This is not taken care of, Sir.
VN:    Hey, this is already – well, I tell you what, I bet you don't get paid!
PRA:   Well, like I said, if you don't want to take care of your business then that's fine, but that's on you.
VN:    I'm not going to pay it.  It's not that I don't want to or can't, I'm not going to pay you!
PRA:   I'm not asking you to pay me, Sir.  This is your debt, not mine.  You're not paying me you're paying for something that you used.
VN:    OK, I'm going to pay for something that's old and wore out?
PRA:   It wasn't old and wore out whenever you opened the account and used its services, Sir.
VN:    Bye, bye.  Thank you for your time.  Bye, bye.

(Doc. 16-5, Tr. of Jan. 27, 2012 Tele. Conversation).

Plaintiff argues that during the January 27 conversation, Defendant's representative repeatedly misrepresented that the Capital One Debt belonged to him and that he was liable to pay the debt.  Defendant argues that Plaintiff's claim under § 1692e fails because Defendant made no misrepresentation and, even if it had, Plaintiff knew that it was not attempting to collect a debt from him.  Defendant argues that even the least sophisticated consumer in Plaintiff's position would know that his wife, and not him, was the target of Defendant's collection efforts.

Defendant essentially argues that Plaintiff's claim under § 1692e fails as a matter of law because he knew he was not a "consumer" and therefore lacks standing to bring such a claim.  In support, Defendant cites *Kaniewski v. Kaniewski v. National Action Financial Svs.*, 678 F. Supp. 2d 541 (E.D. Mich. 2009), and *Hill v. Javitch, Block & Rathbone, LLP*, 574 F. Supp. 2d 819 (S.D. Ohio 2008) (Beckwith, C.J.).  In *Kaniewski*, the court reasoned that a plaintiff who knew that the defendant was not attempting to collect on a debt owed by him could not sustain an

FDCPA claim under § 1692e as a matter of law. *Id.* at 546 (citing *Kujawa v. Palisades Collection, LLC*, 614 F. Supp. 2d 788 (E.D. Mich. 2008)). Similarly, in *Hill*, this Court held that the plaintiff failed to state a claim under § 1692f of the FDCPA where he "clearly understood" that the communications were not directed at him and "[e]ven the least sophisticated consumer would have understood" that the defendant "was not attempting to collect a debt from [the plaintiff]." *Id.* at 826. Thus, even the least sophisticated consumer would not be misled by a debt collector if the individual knew that the collection effort was not directed at him or her. Defendant alleges that the rationale underlying these cases applies here.

The case at bar is distinguishable from *Kaniewski* and *Hill*; however, the principles expressed therein are instructive here. To begin the January 27 conversation, Defendant's representative indicated that she was calling in an attempt to collect on a debt owed by Plaintiff's wife. As the conversation progressed, however, Plaintiff eventually stated that any debt of his wife is also a debt of his. Plaintiff did not indicate that he had legally assumed the debt; rather it is clear that the basis of his statement was his belief that he has an obligation to help repay any debt owed by his wife.[4] Defendant's representative generally concurred with Plaintiff's statements concerning his obligations in relation to his wife's debt. Even though Defendant's representative generally agreed with Plaintiff on that point, she repeatedly made statements

---

[4] Under Ohio law, which is where Plaintiff has resided since 2002, one spouse is not liable for the debts of the other, absent some other applicable theory of liability. *Nesper v. Bank of America*, No. OT-03-012, 2004 WL 628783 (Ohio Ct. App. Mar. 31, 2004) (citing Ohio Rev. Code § 3103.08). In Texas, which is one of the states where Plaintiff resided in prior to 2002, "one spouse is not liable for the other's debt unless the other incurred it as the one's agent or the one failed to support the other and the debt is for necessaries. *Tedder v. Gardner Aldrich*, LLP, 11-0767, 2013 WL 2150081 (Tex. May 17, 2013) (citing Section 3.201 of the Texas Family Code). Thus, an individual's obligations, as they relate to his or her spouse's debt, depend on the underlying facts of the debt. Because the underlying facts of the Capital One Debt are unknown, it is not clear, based on the state of the evidence, whether Plaintiff was legally obligated to repay the Capital One Debt.

emphasizing that she was attempting to collect on a debt owed by Plaintiff's wife, based on her identity as account holder of the Capital One Debt.  Ultimately, and based on Plaintiff's assertions, Defendant's representative indicated that Plaintiff also should repay the Capital One Debt, and consequently requested that Plaintiff make a payment as to the debt.  Thus, by the conclusion of the January 27 conversation, both parties were proceeding with the understanding that if Plaintiff's wife owed the debt, Plaintiff also owed the debt.  Based on that understanding, Defendant's representative requested that Plaintiff and/or his wife repay it, referring to them collectively as "you".

Unlike the *Kaniewski* and *Hill* cases, Defendant attempted to collect from Plaintiff.  Even so, Defendant's representative's statements and requests for payment cannot be viewed as an attempt to mislead Plaintiff, nor did they in fact mislead him, because they were consistent with his own statements, which reasonably reflected a belief that he is at least morally obligated to repay any debt of his wife.[5]  Thus, any misstatement by Defendant's representative during the January 27 conversation, as to the nature of the debt, can be directly attributed to Plaintiff's assertions, and do not demonstrate any intent to deceive.  The purpose of the FDCPA is to eliminate "abusive, deceptive, and unfair debt collection practices," not to punish a debt collector for statements made during the collection process that are consistent with previously made, and facially reasonable, statements of the target consumer or the consumer's spouse.  Therefore, the Court resolves that Defendant is not liable for statements made during the January 27

---

[5] Even if an individual has no legal obligation to pay the debt of his or her spouse, nothing precludes him or her from voluntarily accepting a moral obligation to repay the spouse's debt.  This principle is particularly noteworthy in circumstances where the applicable statute of limitations precludes legal action against a debtor, which appears to be the case here, because when the debt collector cannot take legal action against a debtor, it may still seek to collect the debt by attempting to appeal to the moral compass of the debtor, and by logical extension, a debtor's spouse, who indicates a willingness to repay legitimate debts of the spouse.

conversation because it did not engage in abusive, deceptive, or unfair debt collection practices as it relates to its attempt to collect the Capital One Debt.

Accordingly, Defendant is entitled to summary judgment as it relates to Plaintiff's § 1692e claim.

### C.    Section 1692f Claim

Title 15 U.S.C. § 1692f provides that a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  Defendant argues that Plaintiff's § 1692f claim fails because even the least sophisticated consumer in his position would know he was not the target of Defendant's collection attempts, and because Plaintiff has not identified any conduct that is not already governed by another FDCPA section.

As discussed above, Defendant is correct that a plaintiff has no standing to bring a § 1692f claim when he "clearly understood" that the communications were not directed at him and "[e]ven the least sophisticated consumer would have understood" that the defendant "was not attempting to collect a debt from [the plaintiff]."  *Hill*, supra.  But the facts in the case at bar do not establish that Plaintiff understood that Defendant was not attempting to seek payment from him for a debt.  While the facts support a finding that it was clearly understood that Defendant was attempting to collect from Plaintiff's wife, the evidence also supports a finding that Defendant attempted to collect from Plaintiff.  Thus, Defendant's argument that Plaintiff lacks standing to bring his § 1692f claim is without merit.

The Court, however, agrees with Defendant's argument that the § 1692f claim fails because Plaintiff has not identified any conduct that would not be covered by a different FDCPA provision.  Section 1692f "serves a backstop function, catching those 'unfair practices' which somehow manage to slip by §§ 1692d & 1692e."  *Edwards v. McCormick*, 136 F. Supp. 2d 795,

806 (S.D. Ohio 2001) (Marbley, J.).  That is, "§ 1692f allows the court to sanction improper conduct that the FDCPA fails to address specifically."  *Id.* (quoting *Adams v. Law Offices of Stuckert & Yates*, 926 F. Supp. 521, 528 (E.D. Pa. 1996).  In support of his § 1692f claim, Plaintiff argues that Defendant violated this provision by attempting to collect a debt from him that he did not owe, by not disclosing that the debt was barred by the statute of limitations, and by not resending a second § 1692g notice to him.

Because the factual bases of the alleged violations of § 1692f are covered by another FDCPA provision, they do not support Plaintiff's claim under § 1692f.  Plaintiff alleges that Defendant acted unfairly or unconscionably by attempting to collect the Capital One Debt from him.  The factual basis of this claim, however, is that Defendant made misrepresentations to him as part of the collection attempt.  As such, this alleged misconduct is addressed by § 1692e, which has been discussed above.

Similarly, any misconduct as it relates to allegedly not disclosing that the debt is outside of the statute of limitations, would be governed by § 1692e, insofar as it is considered a misrepresentation of the legal status of the debt.  Moreover, filing a complaint to collect a debt that has been extinguished by the passage of time violates § 1692e(2), which prohibits false representations about the character or legal status of any debt.  *Deere v. Javitch, Block & Rathbone LLP*, 413 F. Supp. 2d 886, 891 (S.D. Ohio 2006) (Beckwith, C.J.); *see Harvey*, 453 F.3d at 332 ("Although we have never addressed the issue and express no opinion on the question, we note that courts in other circuits have held that the filing of a lawsuit to collect a debt that is barred by the statute of limitations violates several subsections of 15 U.S.C. § 1692e, which prohibits a debt collector from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'").  But in this case, Defendant did not file

an action against Plaintiff, and Plaintiff fails to cite any case law finding that it is "unfair or unconscionable" conduct for a debt collector not to disclose whether the statute of limitations would prohibit any legal action to collect a particular debt.  Contrary to Plaintiff's suggestion, the FDCPA does not place an affirmative duty on a debt collector to disclose to a consumer the applicability of the statute of limitations in relation to a debt.  *See Scheiner v. Portfolio Recovery Associates*, No. 1:12-cv-518 (S.D. Ohio Nov. 5, 2013) (noting that "[s]ilence regarding the expiration of the statute of limitations (especially when plaintiff was already aware the statute had expired) is not an actionable false representation of the legal status of a debt.").  Thus, Plaintiff's arguments in relation to the statute of limitations are unpersuasive.

Lastly, insofar as Plaintiff alleges a violation of § 1692g, such conduct is covered by that provision, not § 1692f, and will be discussed below.

**D.      Section 1692g Claim**

The FDCPA provides that a debt collector must communicate with a consumer in connection with the collection of a debt and send the consumer a written notice containing information about the debt.  *See* 15 U.S.C. § 1692g.  The undisputed evidence shows that, after Defendant purchased the Capital One Debt, it sent a written notice pursuant to § 1692g to Maureen Newton's last known address, which was in Abilene, Texas, and that the notice was not returned to Defendant in the mail.  Plaintiff asserts that Defendant knew or should have known that the notice was never received because the 5016 Number has an Ohio area code, Defendant sent the § 1692g notice to a Texas address, and Plaintiff indicated that he did not recall the debt. While Plaintiff suggests that the notice should have been sent to another address, he does not dispute the evidence submitted by Defendant demonstrating that the notice was sent to his wife's last known address and that the notice was not returned.  Under these circumstances, there is a

presumption of delivery. *See Johnson v. Midland Credit Management Inc.*, No. 1:05-cv-1094, 2006 WL 2473004, at *12-13 (N.D. Ohio Aug. 24, 2006). Even though Plaintiff disputed the origin of the debt during the January 27 conversation, he did not indicate that his wife did not receive the notice. Plaintiff fails to present sufficient evidence that the presumption of delivery was rebutted, and that Defendant was aware that the first notice was not delivered. *See id.* ("where the debtor rebuts the presumption of delivery by showing the notice was sent to an incorrect address and returned as undeliverable, the plain language and purpose of the FDCPA requires additional action by the debt collector to send a notice reasonably calculated to reach the consumer."). In other words, Plaintiff simply speculates that Defendant knew or should have known that the § 1692g notice was not received. Speculation is not a sufficient basis to demonstrate a genuine issue of fact. Based on the evidence, Plaintiff cannot demonstrate a violation of § 1692g.

### E.    Defendant's Request for Attorneys' Fees

In the conclusion sections of Defendant's primary and reply briefs in support of its Motion for Summary Judgment, it requests attorneys' fees as a sanction against Plaintiff pursuant to 15 U.S.C. § 1692k(a)(3). Defendant does not, however, fully develop the basis of its request for sanctions against Plaintiff.

Section 1692k(a)(3) provides in part that "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." Because Plaintiff has made non-frivolous arguments in connection with his claims, Defendant is not entitled to attorneys' fees. Although ultimately meritless, Plaintiff did not bring his action in bad faith or for the purpose of harassment. Even though Defendant has not demonstrated an

19

entitlement to attorneys' fees under § 1692k(a)(3), there is an issue relating to Plaintiff's prosecution of this matter that must be addressed.

As noted by Defendant, the alleged facts underlying Plaintiff's claims of misconduct have repeatedly changed during the course of this litigation – from the Verified Complaint, to his discovery responses, to his deposition, and finally to his response to Defendant's Motion for Summary Judgment.  At first glance, it appears that Plaintiff may have been confused about the identity of multiple debt collectors in relation to their attempt to collect different debts.  In other words, Plaintiff may have misidentified another debt collector that was allegedly engaging in misconduct and misplaced his blame for that conduct against Defendant.  More troubling to the Court, however, is Plaintiff's statements at his deposition indicating that he did not review the Verified Complaint, or his responses to Defendant's first set of interrogatories, despite attesting to their veracity, suggesting the possibility that counsel for Plaintiff prepared the documents without ensuring that he reviewed them before he attested to their truthfulness.  Whether this lack of review contributed to the changes in Plaintiff's factual allegations of misconduct against Defendant is unclear, but it is a possibility.  While the Court will not impose any sanctions relating to this conduct, in part because the reason for its occurrence is unknown, it is compelled to instruct counsel for Plaintiff to advise him not to indicate the veracity of statements in a document that he has not reviewed.

## IV. Conclusion

For the forgoing reasons, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 51).  Defendant is entitled to summary judgment as to all of Plaintiff's claims under the FDCPA.  Accordingly, the Clerk shall enter **FINAL JUDGMENT** in favor of Defendant.

The Clerk shall remove Document 16 from the Court's pending motions list.

The Clerk shall remove this case from the Court's pending cases list.

**IT IS SO ORDERED.**

 *s/ George C. Smith*
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**